| | |
|---|---|
| In the Matter of the Revocation of the Naturalization of<br><br>**Jordan Georgieff Georgieff**<br>   a.k.a. Jordan Langazov,<br>      Iordan Langazov<br>      Ventzislav Nedeltchev<br><br>A████-902 | )<br>)<br>)<br>)<br>)<br>)   AFFIDAVIT OF GOOD CAUSE<br>)<br>)<br>)<br>)<br>)<br>) |

I, Douglas E. Lippert, declare under penalty of perjury as follows:

I.     I am a Special Agent with the U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), in the Department of Homeland Security ("DHS"). In this capacity, I have access to the official records maintained by DHS, including the immigration file associated with Jordan Georgieff Georgieff ("Mr. Georgieff"), A████-902, a.k.a. "Jordan Langazov," "Iordan Langazov," and "Ventzislav Nedeltchev."

II.    I have examined the records related to Mr. Georgieff's case. Accordingly, I state on information and belief that the information set forth in this Affidavit of Good Cause is true and correct.

III.   On December 6, 2007, Mr. Georgieff submitted an Application for Naturalization (Form N-400) to the U.S. Citizenship and Immigration Service ("USCIS"). At Part 1, Block C of the application, he placed the letters "N/A" in the corresponding areas associated with the following question, "If you have ever used other names, provide them below." At Part 10, Block D, he checked the box marked "No" next to Questions 15, 23, and 24, which ask if he ever committed a crime or offense for which he was not arrested; ever gave false or misleading information to any U.S. government official while applying for

A███████-902

any immigration benefit or to prevent deportation, exclusion or removal; and, ever lied to any U.S. government official to gain entry or admission into the United States.  At Part 8, Blocks A and B1, Mr. Georgieff identified D███ S███ B██████ ("B██████") as his spouse and typed in the number "1" in a sentence that read, "How many times have you been married (including annulled marriages)?" Last, at Part 10, Block D of the application, he checked the box marked "No" next to Questions 15, 16, 17, 18, and 21, which ask if he ever committed a crime or offense for which he was not arrested; was ever arrested, cited or detained by any law enforcement officer (including USCIS or former INS and military officers) for any reason; was ever charged with committing any crime or offense; was ever convicted of a crime or offense; or was ever in jail or prison.

IV.   On July 25, 2008, Mr. Georgieff appeared before a USCIS examiner in Phoenix, Arizona for a naturalization interview, took an oath and swore that he would answer truthfully all questions posed to him in connection with his N-400 application.  During the interview, the examiner used a red ink pen to update information on the Form N-400 based on responses that Mr. Georgieff provided.  She also used the pen to mark specific questions after she confirmed the accuracy of the answers that Mr. Georgieff previously included in the application.  At Part 1, Block A of the application, for example, she wrote the name "Georgieff" in block letters under the words "Full Middle Name." At Part 8 of the application, the examiner marked Questions A and B, which ask how many times Mr. Georgieff has been married (including annulled marriages), and requests, among other things, the name and date of birth of Mr. Georgieff's spouse.  Last, at Part 10, Section D, the examiner checked off the side of the box marked "No" next to Questions 15, 18, and 21, which ask, "Have you ever committed a crime or offense for which you were not

2

A████902

arrested;" "Have you ever been convicted of a crime or offense;" and, "Have you ever been in jail or prison." Thereafter, Mr. Georgieff swore and certified under penalty of perjury that the contents of the application were true and correct to the best of his knowledge and belief, and signed the Form N-400 under oath.

V.  On August 14, 2008, USCIS provided Mr. Georgieff with a Notice of Naturalization Oath Ceremony (Form N-445). On the reverse side of this document, USCIS listed eight questions that it required Mr. Georgieff to answer and present at his naturalization oath ceremony.

VI.  On August 21, 2008, Mr. Georgieff appeared at the USCIS Phoenix Field Office for a scheduled naturalization oath ceremony. Prior to the ceremony, he completed and signed the opposite side of the Form N-445. In doing so, Mr. Georgieff checked "No" next to eight questions contained in the form, including Question 3, which asks, "Have you knowingly committed any crime or offense, for which you have not been arrested?" Based on his answers on the Form N-445 and the Form N-400, USCIS admitted him as a citizen of the United States and issued him a certificate of naturalization No. 31871476, under the name "Jordan Georgieff."

VII.  Mr. Georgieff illegally procured his naturalization. As an applicant for naturalization pursuant to section 316(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1427(a), he was required to establish that: he (1) was lawfully admitted for permanent residence, (2) resided continuously in the United States for at least five years after his admission as a lawful permanent resident, and (3) during the five years immediately preceding the date of filing his application, he was, and continued to be, a person of good moral character.

A█████902

A.   Mr. Georgieff, however, willfully misrepresented his identity, marital status, and criminal and immigration history when he applied for and obtained lawful permanent residence.   Thus, he was inadmissible under INA § 212(a)(6)(C)(i) when he entered the United States, and could not established that he was lawfully admitted for permanent residence.

1.   On November 9, 2002, Mr. Georgieff married B███████, a native and citizen of Bulgaria, in Sofia, Bulgaria.   Thereafter, the U.S. Department of State's National Visa Center selected B██████as a beneficiary of the Diversity Visa Lottery Program pursuant INA §§ 201 and 203(c).

2.   On or about January 22, 2003, Mr. Georgieff submitted an Application for Immigrant Visa and Alien Registration (Form DS-230 Parts I and II) to a consular officer assigned to the U.S. Embassy in Sofia, Bulgaria.   In his application, Mr. Georgieff claimed that he had never used another name or alias, and identified B███████as his spouse.   Mr. Georgieff also identified his parents as "G███ J█████ L██████" and "M██ K███ L█████," and claimed that he worked as a sales representative in Sofia, Bulgaria, from April 1997 to January 2003.   Last, he typed in the word "first" in a sentence that read, "Including my present marriage, I have been married _____ times." At Part II of the document, Mr. Georgieff denied that he was excludable from admission to the United States on the basis of, among other things, a past criminal conviction related to a crime involving moral turpitude.   He also denied that he was an alien "who seeks or has sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation."

A████-902

3. As a result, on February 27, 2003, the former Immigration and Naturalization Service ("Service" or "INS") admitted Mr. Georgieff to the United States as a DV2 immigrant (spouse of an alien classified as a DV1 or DV6).

4. Mr. Georgieff, however, failed to disclose that he used the names "Iordan Langazov," "Jordan Langazov," and "Ventzislav Nedeltchev" to identify himself in the past, resided in Canada from January 1990 to May 2001, was married to another person when he entered into matrimony with B████, suffered several criminal convictions during his eleven-year residence in Canada, and was eventually deported from that country to Bulgaria under escort.

5. Mr. Georgieff's use of multiple identities, and his marital, criminal and immigration history came to light in October 2008, when the Canadian Border Services Agency ("CBSA") contacted ICE Attaché Office in Vancouver, Canada and informed him that an individual named "Jordan Langazov" or "Iordan Langazov," who had incurred numerous criminal convictions in Canada and who had been previously removed from Canada under escort, was residing in the United States under the name "Jordan Georgieff." Thereafter, ICE obtained additional information from CBSA, the Royal Canadian Mounted Police ("RCMP"), and the Directeur de l'état civil du Québec (Director of Civil Status of Quebec) regarding Mr. Georgieff's presence in Canada under the names "Iordan Langazov," "Jordan Langazov," and "Ventzislav Nedeltchev."

A██████-902

6. According to CBSA, Mr. Georgieff arrived in Canada on January 20, 1990, on

   a flight destined for Cuba under the name "Langazov" and requested refugee

   status.  Thereafter, on September 21, 1991, he married D██ Z██████

   ("Z██████"), a Canadian citizen, and applied for landed immigrant status.

   However, on September 24, 1992, CBSA denied his application.

7. According to RCMP, criminal courts in Canada convicted Mr. Georgieff of

   several criminal offenses between 1993 and 2000.  These included a 1993

   Theft Under $1,000 conviction, in violation of section 334(b)(ii) of the

   Criminal Code; a 1995 Obstruct Peace Officer conviction, in violation of

   section 129 (a)(d) of the Criminal Code; a 1995 Break, Enter, and Commit

   conviction, in violation of section 348(1)(b)(e) of the Criminal Code; a 1995

   Attempted Theft over $1,000 conviction, in violation of section 463(b)-334(a)

   of the Criminal Code; a 1995 Possession of Break-in Instruments conviction,

   in violation of section 351(1) of the Criminal Code; a 1996 Theft Under

   $5,000 conviction, in violation of section 334(b)(i) of the Criminal Code; a

   1996 Uttering Threats conviction, in violation of section 264.1(1)(a)(2) of the

   Criminal Code; a 1996 Assault conviction, in violation of section 266(a) of

   the Criminal Code; a 1996 Use of a Credit Card Obtained by Crime

   conviction, in violation of section 342(1)(c)(i)(e) of the Criminal Code; a 1996

   Possession of Break-in Instruments conviction, in violation section 351 (1) of

   the Criminal Code; a 1996 Fail to Comply with Recognizance conviction, in

   violation of section 145(3)(b) of the Criminal Code; a 1996 Use of Credit

   Card Obtained by Crime conviction, in violation of section 342(1)(c)(i)(f) of

the Criminal Code; a 1996 Possession of Property Obtained by Crime under

$5,000 conviction, in violation of section 355(b)(ii) of the Criminal Code; a

2000 Obstruction conviction, in violation of section 129(a) of the Criminal

Code; a 2000 Possession of Stolen Mail conviction, in violation of section

356(1)(b) of the Criminal Code; a 2000 Possession of Property Obtained by

Crime conviction, in violation of section 355 of the Criminal Code; and, a

2000 Fraud Over $5,000 conviction, in violation of section 380(1)(a) of the

Criminal Code.

8. According to RCMP report, RCMP arrested Mr. Georgieff for theft on April

21, 2001. At that time, he identified himself as Ventzislav Nedeltchev ("Mr.

Nedeltchev"), and provided a Canadian citizenship card under that name.

However, RCMP subsequently determined that the card was a substituted

copy of the original, and confirmed that the real Mr. Nedeltchev resided in

Montreal, and was, indeed, a Canadian citizen. Thereafter, RCMP conducted

a fingerprint check and discovered that the individual in their custody was

known to them under the name "Langazov."

9. On May 8, 2001, CBSA deported Mr. Georgieff (a.k.a. "Iordan Langazov,"

"Jordan Langazov," "Ventzislav Nedeltchev") under the name "Langazov" to

Bulgaria, under escort.

10. On August 11, 2003, Mr. Georgieff (a.k.a. "Iordan Langazov," "Jordan

Langazov," "Ventzislav Nedeltchev") and Z██████divorced.

11. On December 7, 2008, a crime scene investigator assigned to the Bellingham,

Washington Police Department conducted a comparative analysis of Mr.

Langazov's fingerprints and those contained in Mr. Georgieff's alien

registration file, at ICE's request, and determined that Mr. Langazov's and

Mr. Georgieff's fingerprints belonged to the same person.

12. On January 8, 2010, the Directeur de l'état civil du Québec (Director of Civil

Status of Quebec) confirmed that Mr. Georgieff, using the name "Langazov,"

and Z█████ married on September 21, 1991 and divorced on August 11,

2003.

13. Based on these facts, Mr. Georgieff willfully misrepresented his marital

status, and criminal and immigration history when he applied for and obtained

lawful permanent residence in the United States as the spouse of a beneficiary

of the Diversity Visa Lottery Program. Indeed, Mr. Georgieff used at least

three aliases during his eleven-year residence in Canada, was married to

Z█████ when he entered into matrimony with B█████, incurred several

criminal convictions in Canada and, as a consequence, was deported to

Bulgaria under escort. Accordingly, he was ineligible for admission to the

United States under the Diversity Visa Lottery Program, or for naturalization

under INA § 316(a), 8 U.S.C. § 1427(a), and illegally procured his

naturalization.

B.   Mr. Georgieff also could not have established that he was a person of good moral

character. Indeed, during the statutory period, he consistently made willful

misrepresentations regarding his identity, marital status, and criminal and

immigration history that adversely reflected upon his moral character, and

culminated in the illegal procurement of a certificate of naturalization.

A█████-902

1. An applicant for naturalization who provides false testimony during the statutory period in order to obtain an immigration benefit is precluded from establishing good moral character.

2. On or about January 22, 2003, Mr. Georgieff submitted an Application for Immigrant Visa and Alien Registration to a consular officer assigned to the U.S. Embassy in Sofia, Bulgaria. In his application, he claimed that he had never used another name or alias, and identified B█████ as his spouse. Mr. Georgieff also identified his parents as "G██ J█████ L██████" and "M██ K█████ L██████," and claimed that he worked as a sales representative in Sofia, Bulgaria from April 1997 to January 2003. Last, he typed in the word "first" in a sentence that read, "Including my present marriage, I have been married _____ times." At Part II of the document, Mr. Georgieff denied that he was excludable from admission to the United States on the basis of, among other things, a past criminal conviction related to a crime involving moral turpitude. He also denied that he was an alien "who seeks or has sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation."

3. On December 6, 2007, after his admission to the United States as a lawful permanent resident under the Diversity Visa Lottery Program, Mr. Georgieff submitted an Application for Naturalization to USCIS. In the application, he indicated that he was born on April 12, 1968, in Bulgaria and claimed that he had never used another name. Mr. Georgieff also identified B█████ as his spouse and typed in the number "1" in a sentence that read, "How many times

A█████-902

have you been married (including annulled marriages)." Last, he denied that

he ever committed a crime or offense for which he was not arrested; was ever

arrested, cited or detained by any law enforcement officer; was ever convicted

of a crime or offense; or was ever jailed or imprisoned.

4. On July 25, 2008, Mr. Georgieff appeared before the USCIS examiner in

Phoenix, Arizona for a naturalization interview, took an oath and swore that

he would answer truthfully all questions posed to him in connection with his

N-400 application. During the interview, the examiner used a red ink pen to

update information on the Form N-400 based on responses that Mr. Georgieff

provided. She also used the pen to check off specific questions after she

confirmed the accuracy of the answers that Mr. Georgieff previously included

in the application. At Part 1, Block A of the application, for example, she

wrote the name "Georgieff" in block letters under the words "Full Middle

Name." At Part 8 of the application, the examiner checked off Questions A

and B, which ask how many times Mr. Georgieff has been married (including

annulled marriages), and requests, among other things, the name and date of

birth of Mr. Georgieff's spouse. Last, at Part 10, Section D, the examiner

checked off the side of the box marked "No" next to Questions 15, 18, and

21,which ask, "Have you ever committed a crime or offense for which you

were not arrested;" "Have you ever been convicted of a crime or offense;"

and, "Have you ever been in jail or prison." Thereafter, Mr. Georgieff swore

and certified under penalty of perjury that the contents of the application were

A████-902

true and correct to the best of his knowledge and belief, and signed the Form

N-400 under oath.

5.  On August 21, 2008, Mr. Georgieff appeared at the USCIS Phoenix Field

Office for a scheduled naturalization oath ceremony.  Prior to the ceremony,

he completed and signed the opposite side of a Form N-445.  In doing so, Mr.

Georgieff checked "No" next to eight questions contained in the form,

including Question 3, which asks, "Have you knowingly committed any crime

or offense, for which you have not been arrested?"  Based on Mr. Georgieff's

answers to questions on the From N-445 and the From N-400, USCIS

admitted him as a citizen of the United States and issued him a certificate of

naturalization No. ████476 under the name "Jordan Georgieff."

6.  Mr. Georgieff's statements in his Application for Immigrant Visa and Alien

Registration and/or Application for Naturalization, however, contained

knowingly false statements and/or omissions.  For example, in addition to

using the name "Jordan Georgieff," he also identified himself in the past as

"Jordan Langazov," "Iordan Langazov," and "Ventzislav Nedeltchev."

Further, and of equal import, Mr. Georgieff married Z████ on September

21, 1991, and wed B████ on November 9, 2002, while still married to

Z████, thus committing a crime of bigamy. Indeed, Mr. Georgieff did not

divorce Z████ until August 11, 2003.  In addition, Mr. Georgieff did not

work as a sales representative in Sofia, Bulgaria from April 1997 to January

2003.  In fact, he resided in Canada from January 20, 1990 to May 8, 2001.

Thus, his statements fail to properly identify his whereabouts from April 1997

A███████902

to May 2001 – a period of more than four years. Further, contrary to Mr.

Georgieff's statements, he has been convicted of a crime or offense, and has

been in jail or prison. Indeed, according to RCMP report, criminal courts in

Canada convicted him of several criminal offenses between 1993 and 2000,

under the name "Jordan Langazov."

6. Making a false statement or representation knowing it to be false or

knowingly failing to disclose a material fact in order to obtain admission to

the United States and to illegally procure United States citizenship, as well as

bigamy, are crimes involving moral turpitude.

7. Because Mr. Georgieff committed crimes involving moral turpitude during the

statutory period, he could not have established that he was a person of good

moral character.

C. Mr. Georgieff also could not have established that he was a person of good moral

character because he provided false testimony under oath for the purpose of

obtaining an immigration benefit during his July 25, 2008 naturalization

interview.

1. An applicant for naturalization who provides false testimony during the

statutory period in order to obtain an immigration benefit is precluded from

establishing good moral character.

2. On July 25, 2008, Ms. Georgieff appeared before the USCIS examiner for a

scheduled naturalization interview. At the beginning of the interview, he took

an oath and affirmed that he would answer all questions truthfully.

A▮▮▮▮▮-902

3. During the course of the interview, and in order to determine his eligibility for naturalization, the USCIS examiner asked Mr. Georgieff, among other things, if he had ever committed a crime or offense for which he had not been arrested, ever been convicted of a crime or offense, and ever been in jail or prison. In response to these questions, Mr. Georgieff testified, under oath, that he had not.

4. The testimony that Mr. Georgieff gave to the examiner, however, was false.

5. Contrary to his statements, Mr. Georgieff committed a crime of bigamy for which he was not arrested when he applied for and gained admission to the United States as the spouse of a beneficiary of the Diversity Visa Lottery Program.

6. Mr. Georgieff claimed on his Application for Immigrant Visa and Alien Registration that he had never been married before, and cited to his November 9, 2002 marriage to ▮▮▮▮▮▮ as evidence of his eligibility for benefits under the Diversity Visa Lottery Program. However, Mr. Georgieff married ▮▮▮▮▮▮ on September 21, 1991 and remained married to her when he applied for benefits under the Diversity Visa Lottery Program in January 22, 2003. In fact, he did not divorce her until August 11, 2003. Consequently, Mr. Georgieff was not legally married to ▮▮▮▮▮▮ when the Department admitted him to the United States as the spouse of a beneficiary of the Diversity Visa Lottery Program.

7. Contrary to his statements, Mr. Georgieff has been convicted of a crime or offense, and has been in jail or prison. Indeed, according to RCMP report,

A⬛️⬛️-902

criminal courts in Canada convicted him of several criminal offenses between 1993 and 2000, under the name "Jordan Langazov."

8.  Mr. Georgieff's false testimony establishes that he is not a person of good moral character.

VIII.   As a result, Mr. Georgieff's application for naturalization could not have been lawfully approved, and he illegally procured his United States citizenship.

IX.   Mr. Georgieff procured his naturalization by willful misrepresentation and concealment of material facts.

A.   Mr. Georgieff willfully misrepresented on his naturalization application that he had not used any other names to identify himself in the past; had only been married once; never committed a crime or offense for which he was not arrested; never gave false or misleading information to any U.S. government official while applying for an immigration benefit or to prevent deportation, exclusion or removal; never lied to any U.S. government official to gain entry or admission into the United States; was never arrested, cited or detained by any law enforcement officer (including USCIS or former INS and military officers) for any reason; was never charged with committing any crime or offense; was never convicted of a crime or offense; and, was never in jail or prison.

1.   On December 6, 2007, Mr. Georgieff submitted a Form N-400 to USCIS. At Part 1, Block C of the application, he placed the letters "N/A" in the blocks associated with the following question: "If you have ever used other names, provide them below." At Part 10, Block D, he checked the box marked "No" next to Questions 15, 23, and 24, which ask if he ever

14

A▮▮▮▮-902

committed a crime or offense for which he was not arrested; ever gave

false or misleading information to any U.S. government official while

applying for any immigration benefit or to prevent deportation, exclusion

or removal; and, ever lied to any U.S. government official to gain entry or

admission into the United States.  At Part 8, Blocks A and B1, Mr.

Georgieff identified B▮▮▮▮ as his spouse and typed in the number "1" in

a sentence that read, "How many times have you been married (including

annulled marriages)."  Last, at Part 10, Block D of the application, he

checked the box marked "No" next to Questions 15, 16, 17, 18, and 21,

which ask if he ever committed a crime or offense for which he was not

arrested; was ever arrested, cited or detained by any law enforcement

officer (including USCIS or former INS and military officers) for any

reason; was ever charged with committing any crime or offense; was ever

convicted of a crime or offense; or was ever in jail or prison.

2.      On July 25, 2008, Mr. Georgieff appeared before the USCIS examiner in

Phoenix, Arizona for a naturalization interview, took an oath and swore

that he would answer truthfully all questions posed to him in connection

with his N-400 application.  During the interview, the examiner used a red

ink pen to update information on the Form N-400 based on responses that

Mr. Georgieff provided.  She also used the pen to check off specific

questions after she confirmed the accuracy of the answers that Mr.

Georgieff previously included in the application.  At Part 1, Block A of

the application, for example, she wrote the name "Georgieff" in block

letters under the words "Full Middle Name." At Part 8 of the application,

the examiner checked off Questions A and B, which ask how many times

Mr. Georgieff has been married (including annulled marriages), and

requests, among other things, the name and date of birth of Mr.

Georgieff's spouse. Last, at Part 10, Section D, the examiner checked off

the side of the box marked "No" next to Questions 15, 18, and 21, which

ask, "Have you ever committed a crime or offense for which you were not

arrested;" "Have you ever been convicted of a crime or offense;" and,

"Have you ever been in jail or prison." Thereafter, Mr. Georgieff swore

and certified under penalty of perjury that the contents of the application

were true and correct to the best of his knowledge and belief, and signed

the Form N-400 under oath.

3.    On August 21, 2008, Mr. Georgieff appeared at the USCIS Phoenix Field

Office for a scheduled naturalization oath ceremony. Prior to the

ceremony, he completed and signed the opposite side of the Form N-445.

In doing so, Mr. Georgieff checked "No" next to eight questions contained

in the form, including Question 3, which asks, "Have you knowingly

committed any crime or offense, for which you have not been arrested?"

Thereafter, USCIS admitted him as a citizen of the United States and

issued him a certificate of naturalization No. ███476 under the name

"Jordan Georgieff."

A████-902

B.     Mr. Georgieff, however, misrepresented his marital status, and concealed material facts about his past criminal and immigration history. Moreover, he did so knowing that his representations were false and misleading.

1.     Contrary to the information that he provided on his Form N-400, Mr. Georgieff used the aliases "Jordan Langazov," "Iordan Langazov," and "Ventzislav Nedeltchev" in the past.

2.     Contrary to the information that he provided on his Form N-400, Mr. Georgieff knowingly committed a crime for which he was not arrested when he misrepresented his marital status and immigration history and applied for and obtained lawful permanent residence in the United States as the spouse of a beneficiary of the Diversity Visa Lottery Program.

3.     Contrary to the information that he provided on his Form N-400, Mr. Georgieff provided false or misleading information to a U.S. government official while applying for any immigration benefit – specifically, admission to the United States as the spouse of a beneficiary of the Diversity Visa Lottery Program.

4.     Contrary to the information that he provided on his Form N-400, Mr. Georgieff lied to a U.S. government official to gain entry or admission into the United States when he misrepresented his marital status and immigration history and applied for and obtained lawful permanent residence in the United States as the spouse of a beneficiary of the Diversity Visa Lottery Program.

5.     Contrary to the information that he provided on his Form N-400, Mr. Georgieff has been convicted of a crime or offense, and has been in jail or prison. Indeed, according to RCMP report, criminal courts in Canada convicted him of

several criminal offenses between 1993 and 2000, under the name "Jordan Langazov."

C. Mr. Georgieff's misrepresentations and concealment of his past immigration and criminal history were material to determining his eligibility for naturalization because they would have had the natural tendency to influence USCIS' decision whether to approve his naturalization application. In fact, Mr. Georgieff's true identity, and immigration and criminal history, would have disqualified him from naturalization.

D. Mr. Georgieff procured his naturalization by misrepresenting his immigration and criminal history.

X. Based on the facts outlined in paragraphs III through IX, good cause exists to institute proceedings, pursuant to 8 U.S.C. § 1451, to revoke Mr. Georgieff's citizenship, and to cancel his certificate of naturalization.

XI. Mr. Georgieff's last known place of residence is █████████████ Sofia, Bulgaria.

DECLARATION IN LIEU OF JURAT
(28 U.S.C. § 1746)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_April 26, 2013_.

_[signature]_
Douglas E. Lippert
Special Agent
Homeland Security Investigations
U.S. Department of Homeland Security