**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORDAN GEORGIEFF,<br><br>Defendant. | Civil Action No. 13-cv-00626 (KBJ) |

**MEMORANDUM OPINION**

Defendant Jordan Georgieff is a native of Bulgaria who became a naturalized citizen of the United States in 2008. The United States alleges that Georgieff fraudulently obtained this citizenship and has brought the instant action to denaturalize him. The government alleges two independent grounds for denaturalization: first, that Georgieff illegally procured U.S. citizenship by failing to acquire permanent resident status lawfully and providing false testimony for the purpose of obtaining naturalization; and second, that Georgieff procured his citizenship by "willful misrepresentation and concealment of material facts." (Pl.'s Mot. Summ. J., ECF No. 14 ("Pl.'s Mot."), at 1.) Before this Court at present is the government's motion for summary judgment. (*See id.*) Because this Court concludes that the government has met its burden of providing "clear, unequivocal and convincing evidence" regarding two different grounds for denaturalization—procuring citizenship illegally, and procuring citizenship by willful misrepresentation and concealment of material facts—the Court will **GRANT** the government's motion for summary judgment and **ORDER**

the revocation of Georgieff's naturalization. An order consistent with this memorandum opinion will follow.

## I. BACKGROUND

Defendant Georgieff was born in Sofia, Bulgaria in 1968. (*See* Application for Immigrant Visa and Alien Registration ("Visa Application"), Ex. A-1 to Pl.'s Statement of Material Facts, ECF No. 15-2.)[1] In 1990, Georgieff immigrated to Canada, and applied for refugee status using the name "Jordan Langazov." (Pl.'s Statement of Material Facts ("SMF"), ECF No. 14-1, ¶ 2.)[2] Georgieff lived in Canada for approximately eleven years. (*Id.* ¶ 6.) During that time, Georgieff committed several serious crimes, including theft, breaking and entering, assault, use of a credit card obtained by crime, and possession of property obtained by crime. (Certificate of Conviction ("Certificate"), Ex. D to SMF, ECF No. 15-5.) As a result of these convictions, Canada deported Georgieff in May 2001. (*Id.* ¶ 6.)

Prior to his deportation, Georgieff had married a Canadian citizen, Diana Zidarova, (*see* Letter from Quebec Civil Status Director ("Quebec Letter"), Ex. C to SMF, ECF No. 15-4); however, a little more than a year after his deportation, Georgieff married a second woman, Dariana Borisova, without divorcing Zidarova. (*See* Marriage Certificate, Ex. G to SMF, ECF No. 15-8; *see also* Quebec Letter, Ex. C to SMF.) Borisova is a citizen of Bulgaria, but through the Diversity Visa Lottery Program she also became a legal permanent resident of the United States following her marriage to

---

[1] Page numbers throughout this memorandum opinion refer to those that the Court's electronic filing system assigns.

[2] The government has submitted fingerprint records establishing that "Jordan Langazov" was in reality Georgieff. (*See* Latent Print Report, Ex. H to SMF, ECF No. 15-9.)

Georgieff. (*See* SMF ¶ 9.) The Diversity Visa Lottery Program allows immigrants from countries with low rates of immigration to the United States to enter into a lottery through which they can obtain a visa for permanent residency. *See* 8 U.S.C. § 1153(c). Spouses and other immediate relatives of Diversity Visa recipients are given preferential treatment if they apply for a visa. *See id.* § 1153(a).

In January 2003, Georgieff used his marriage to Borisova to apply for a U.S. visa. (*See* SMF ¶ 10.) Georgieff made several false statements in the visa application, claiming that his marriage to Borisova was his first marriage, that he had never been convicted of a crime involving moral turpitude, and had never used any other name or alias. (*See id.* ¶ 11.) Unaware of these falsehoods, on February 27, 2003, the United States granted Georgieff a visa based on his marriage to Borisova. (*See id.* ¶ 12.)

After living in the United States for about four years, Georgieff applied to become a naturalized citizen in December 2007. On July 25, 2008, the United States Citizenship and Immigration Service ("USCIS") interviewed Georgieff. (*See* N-400 Application for Naturalization ("Naturalization Application"), Ex. A-3 to SMF, ECF No. 15-2.) The government maintains that in both the application and the interview, Georgieff again made a number of misrepresentations, including claiming only to have been married once, stating that he had never been convicted of a crime or spent time in jail or prison, and denying that he had ever used an alias. (*See id.*) Lacking any information to the contrary, USCIS approved his application, and Georgieff took his oath of citizenship on August 21, 2008. (SMF ¶ 23.)

The government initiated this denaturalization action on May 2, 2013, when it brought a Complaint to Revoke Naturalization against Georgieff. (*See* Compl., ECF

No. 1.) Georgieff is currently living in Bulgaria, so the government sent two formal requests to Bulgarian authorities to serve Georgieff under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. (*See* Mot. to Allow Service by Publication, ECF No. 8, at 1.) Because Bulgarian authorities were unsuccessful in their attempt to serve Georgieff (*see id.*), this Court permitted the government to effect service of process by publication. (*See* Order Granting Motion for Service by Publication, ECF No. 10.) Beginning in June 2014, the government published a notice nine times in three different newspapers, informing Georgieff of the nature of the action, and also how and by when he was required to respond.[3] (*See* Pl.'s Notice of Service of Process by Publication, ECF No. 12, at 1.) The government published the last notice on July 25, 2014, and the Defendant has not entered an appearance to date. (*See* Pl.'s Notice of Service of Process by Publication, at 1.) The government filed the instant motion for summary judgment on November 14, 2014. (*See* Pl.'s Mot.)

## II. LEGAL STANDARD

### A. Denaturalization Proceedings

Section 1451 of Title 8 of the United States Code lays out two grounds for revoking a naturalized person's citizenship. Naturalized citizenship can be revoked, first, if it was "illegally procured," and second, if it was "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). If a court finds that the government has met its burden on either ground, then it must revoke the individual's citizenship. *Fedorenko v. United States*, 449 U.S. 490, 517 (1981)

[3] Three of the notices were in the *Standart*, a newspaper published in Sofia, Bulgaria, with a circulation of up to approximately 90,000. (Decl. of Daniela Katzarova, Ex. C to Pl.'s Notice of Service of Process by Publication, ECF No. 12-4.)

("[O]nce a district court determines that the Government has met its burden . . . it has no discretion to excuse the conduct.").

It is well established that naturalized citizenship is "illegally procured" if the applicant failed to comply strictly with any of the "congressionally imposed prerequisites to the acquisition of citizenship." *Id.* at 506. In other words, "'every certificate of citizenship must be treated as granted upon condition that the government may . . . demand its cancellation unless issued in accordance with'" all of the requirement set forth by Congress. *Id.* (quoting *United States v. Ginsberg*, 243 U.S. 472, 475 (1917)). One such statutory prerequisite is that the applicant was "lawfully admitted to the United States for permanent residence[.]" 8 U.S.C. § 1429. Another statutory requirement is that the applicant "has been and still is a person of good moral character" for a period that begins with the application for naturalization, and continues until the applicant takes the oath of allegiance. *See* 8 U.S.C. § 1427(a)(3). Congress has specifically instructed that a person is not of good moral character if they have "given false testimony for the purpose of obtaining any [immigration] benefits[.]" 8 U.S.C. § 1101(f)(6).

Naturalized citizenship can also be revoked if it was procured as a result of the applicant's willful misrepresentation or concealment of a material fact. *See Kungys v. United States*, 485 U.S. 759, 767 (1988); *see also United States v. Alrasheedi*, 953 F. Supp. 2d 112, 115 (D.D.C. 2013). The causation (procurement due to fraud) element is satisfied if disclosure of the misrepresentation would have "presumably disqualified" the applicant. *Kungys*, 485 U.S. at 777 (emphasis omitted). Moreover, the misrepresentation or concealment must be "both willful and material," *id*. at 767;

however, willfulness requires only knowledge of the falsity of the statement. *See Witter v. I.N.S.*, 113 F.3d 549, 554 (5th Cir. 1997) ("Proof of an intent to deceive is not required; rather, knowledge of the falsity of the representation is sufficient." (citation omitted)). A fact is material if it has "a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Kungys*, 485 U.S. at 772.

**B. Motions for Summary Judgment in Uncontested Denaturalization Cases**

When a defendant defaults in a denaturalization proceeding, the government must prove its case nevertheless. *See Klapprott v. United States*, 335 U.S. 601, 612–13 (1949) ("[C]ourts should not . . . deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made default in appearance."); *Alrasheedi*, 953 F. Supp. 2d at 114 (requiring the government to prove that citizenship was procured illegally or fraudulently in order to obtain summary judgment in a denaturalization case despite no response from defendant). Just as the severe consequences of a conviction make default judgment inappropriate in criminal cases, default judgment is similarly unavailable to revoke a person's naturalized citizenship. *Klapprott*, 335 U.S. at 611 ("Denaturalization consequences may be more grave than consequences that flow from conviction for crimes."); *see also Schneiderman v. United States*, 320 U.S. 118, 122 (1943) (denaturalization deprives a defendant of "the priceless benefits that derive from [citizenship]"). Furthermore, "because of the grave consequences incident to denaturalization proceedings," the government bears the burden of proving its case by "clear, unequivocal and convincing evidence[.]" *Klapprott*, 335 U.S. at 612; *Alrasheedi*, 953 F. Supp. 2d at 114.

If the government presents evidence of illegal or fraudulent procurement of naturalization in support of its request for denaturalization and moves for summary judgment, the court may grant summary judgment despite the defendant's failure to appear. *See Alrasheedi*, 953 F. Supp. 2d at 114. As with any other motion for summary judgment brought under Rule 56, a motion for summary judgment in a denaturalization case shall be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion, and must point to specific competent evidence demonstrating the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The Court must make all factual inferences in the light most favorable to the nonmoving party. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

## III. ANALYSIS

The government argues that Georgieff's certificate of naturalization should be revoked because he procured his citizenship both illegally and fraudulently. In support of this contention, the government has submitted evidence of four different occasions on which Georgieff provided the United States with information as part of the immigration process—(1) his January 2003 visa application, (2) his February 2003 interview with a USCIS agent, (3) his December 2007 application for citizenship, and (4) his July 2008 naturalization interview—along with documentation showing that he made false statements on each of those occasions.[4]

---

[4] The government primarily relies on documents provided by Canadian authorities. These foreign documents lack the certification by an appropriate diplomatic official required by Rule 902(3) of the

This Court has no trouble concluding that the government has met its burden of showing that Georgieff's naturalization was illegally and fraudulently procured. Throughout the immigration process, Georgieff consistently lied about his alias, his marital status, and his criminal history. For example, both the visa application and the naturalization application specifically asked Georgieff to list any alias or other names he had used. (Visa Application, Ex. A-1 to SMF; Naturalization Application, Ex. A-3 to SMF.) However, Georgieff concealed the alias "Jordan Langazov," failing to list it on either document. (Ex. A to SMF; *see also* Latent Print Report, Ex. H. to SMF (fingerprint comparison indicating that Georgieff and Langazov are the same person)).

Georgieff also lied about his marital status. In his visa application, his naturalization application, and his naturalization interview, he claimed to have only been married once, to Dariana Borisova. (Visa Application, Ex. A-1 to SMF; Naturalization Application, Ex. A-3 to SMF; Decl. of Rose Erivez-Arthur, Ex. A to SMF, ECF No. 15-2, ¶ 19.) But marriage records show that he had previously been—and at the time of his visa application, still was—married to Diana Zidarova when he married Borisova (*see* Quebec Letter, Ex. C to SMF (noting marriage to Zidarova on September 21, 1991, and subsequent divorce on August 11, 2003); Marriage Certificate, Ex. G to SMF (noting marriage to Borisova on November 9, 2002)).

---

Federal Rules of Evidence, *see* Fed. R. Evid. 902(3); however, this Court is nevertheless free to consider these documents because Georgieff has not disputed their authenticity. *See Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 37–38 (D.C. Cir. 1987) ("[I]t is well established that inadmissible documents may be considered by the court if not challenged." (internal quotation marks and citation omitted)); *United States v. Perlmuter*, 693 F.2d 1290, 1292–93 (9th Cir. 1982) (reversing district court's denaturalization order after defendant challenged the authenticity of foreign documents because they lacked the requisite certification).

Finally, Georgieff repeatedly gave the United States false information about his criminal history. Georgieff was asked if he had ever been convicted of a crime in his visa application, his naturalization application, his visa interview, and his naturalization interview—on each occasion, he denied ever having been convicted of a crime. (Visa Application, Ex. A-1 to SMF; Naturalization Application, Ex. A-3 to SMF; Decl. of Rose Erivez-Arthur, Ex. A to SMF, ECF No. 15-2, ¶¶ 9, 20.) This denial was false; Georgieff was convicted of numerous crimes when he lived in Canada. (*See* Certificate, Ex. D to SMF (noting a series of criminal convictions on five separate occasions for, *inter alia*, theft, assault, use of credit card obtained by crime, and possession of property obtained by crime)).

Thus, the government has proven by clear, unequivocal, and convincing evidence that Georgieff procured his citizenship illegally. As explained, the record shows that, at the very first step of the naturalization process—obtaining lawful residence—Georgieff fraudulently obtained his visa, and he also lied to USCIS officials when he was later interviewed as part of the naturalization process. *See* 8 U.S.C. § 1429 (requiring lawful admission to the United States for permanent residence); *see also* 8 U.S.C. §§ 1427(a)(3), 1101(f)(6) (prohibiting false testimony for the purpose of obtaining an immigration benefit).

What is more, the false statements on Georgieff's naturalization application and in his naturalization interview also justify revoking Georgieff's citizenship as having been "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). The statements about his lack of criminal history or aliases and his marital status, which Georgieff obviously knew to be false, were material because

truthful answers would have shown that Georgieff had failed to obtain permanent resident status lawfully, and truthful answers would have disqualified Georgieff from having his application approved. (*See* Decl. of Rose Erivez-Arthur, Ex. A to SMF, ¶ 25 (affidavit of the immigration official who interviewed Georgieff, noting that she would not have approved his application had he disclosed his alias, his bigamous marriage, or his criminal history.))

Therefore, the Court finds that there is clear, unequivocal, and convincing evidence that Georgieff both illegally procured his citizenship and procured it through the willful misrepresentation or concealment of a material fact.

## IV. CONCLUSION

For the reasons set forth above, this Court concludes that the government has met its burden and has amply demonstrated that Georgieff illegally procured his U. S. citizenship and/or that he procured his citizenship by misrepresenting or concealing material facts. Consequently, this Court will **GRANT** Plaintiff's motion for summary judgment. A separate order entering judgment and revoking the Defendant's certificate of naturalization accompanies this Memorandum Opinion.

Date: April 24, 2015

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge